1

2

3

4

5

6

7

8 UNITED STATES DISTRICT COURT

9 CENTRAL DISTRICT OF CALIFORNIA

10

11 HELEN R. STURGES,                              )    Case No.  CV 07-3196-JTL
                                                )
12            Plaintiff,                          )    MEMORANDUM OPINION AND ORDER
                                                )
13     v.                                        )
                                                )
14                                               )
    MICHAEL J. ASTRUE,                           )
15   Commissioner of Social Security,             )
                                                )
16            Defendant.                          )
                                                )
17  _____      )

18                              **PROCEEDINGS**

19        On May 18, 2007, Helen R. Sturges ("plaintiff") filed a Complaint seeking review of the

20 Social Security Administration's denial of her application for Disability Insurance Benefits.  On

21 June 4, 2007, plaintiff filed a Consent to Proceed Before United States Magistrate Judge

22 Jennifer T. Lum.  On June 12, 2007, Michael J. Astrue, Commissioner of Social Security

23 ("defendant"), filed a Consent to Proceed Before United States Magistrate Judge Jennifer T.

24 Lum.  Thereafter, on November 26, 2007, defendant filed an Answer to the Complaint.  On

25 February 29, 2008, the parties filed their Joint Stipulation.

26        The matter is now ready for decision.

27 ///

28 ///

**BACKGROUND**

1

2      Plaintiff fell down a flight of stairs in January 1999 and suffered a whiplash injury to her

3  neck.  (See Administrative Record ["AR"] at 73, 258).  Plaintiff continued to work with treatment

4  and a pain injection, but after plaintiff's second pain injection was administered on March 6,

5  2002, plaintiff's pain became worse and she subsequently stopped working.  (See AR at 73-74,

6  155; 257-58).  On November 13, 2002, plaintiff filed an application for Disability Insurance

7  Benefits alleging a disability onset date of March 6, 2002.  (AR at 77-79).  The Commissioner

8  denied plaintiff's application for benefits.  (AR at 42).  Thereafter, plaintiff requested a hearing

9  before an Administrative Law Judge ("ALJ").  (AR at 57).

10      On October 27, 2003, the ALJ conducted a hearing in Downey, California.  (See AR at

11  222-53).  Plaintiff represented herself at the hearing and testified.  (AR at 227, 231-45).

12  Marcetta Chapman, plaintiff's niece, appeared at the hearing and testified as a witness.  (AR

13  at 245-47).  Susan Green, a vocational expert, also testified at the hearing.  (AR at 247-51).

14  On January 30, 2004, the ALJ issued his decision denying benefits to plaintiff.  (AR at 47-52).

15  The Appeals Council granted plaintiff's timely request for review of the ALJ's decision and, on

16  July 8, 2004, reversed the ALJ's decision.  (AR at 70-72).  The Appeals Council remanded the

17  matter for further proceedings to allow the ALJ to adequately address the limitations assessed

18  by plaintiff's treating physician, Narinder Kapoor, M.D., and to properly evaluate plaintiff's

19  subjective complaints.  (Id.).

20      Thereafter, the ALJ held two additional hearings.  On April 28, 2005, the ALJ conducted

21  a hearing in Downey, California.  (See AR at 254-67).  Plaintiff represented herself at the

22  hearing and testified regarding her pain and daily activities.  (AR at 257-67).  On August 3,

23  2005, the ALJ conducted another hearing in Downey, California.  (See AR at 268-81).  Plaintiff

24  represented herself and testified about her past relevant work as a medical laboratory assistant

25  and a school bus operator.  (AR at 272-73, 275-77, 280-81).  Susan Green, a vocational expert,

26  also testified a the hearing.  (AR at 271-72, 273-75, 277-79).

27      On September 15, 2006, the ALJ issued a second decision denying benefits to plaintiff.

28  (AR at 20-25).  The ALJ determined that plaintiff had severe cervical spine degenerative disc

1  disease and non-severe depression. (AR at 22). The ALJ determined that plaintiff's conditions

2  did not meet or equal any of the impairments listed in Appendix 1 of the regulations. (Id.). The

3  ALJ found plaintiff's allegations of pain were not entirely credible and concluded that plaintiff

4  could perform her past relevant work as a medical laboratory assistant and as a school bus

5  operator. (AR at 23-25). Accordingly, the ALJ concluded that plaintiff was not disabled through

6  the date of the decision. (AR at 25). The Appeals Council denied plaintiff's timely request for

7  review. (AR at 7-9).

8      Thereafter, plaintiff appealed to the United States District Court.

9

10  **PLAINTIFF'S CONTENTIONS**

11      Plaintiff makes the following claims:

12      1.    The ALJ failed to properly consider the opinion of Barbara Gayle, Ph.D., regarding

13  plaintiff's mental functional limitations.

14      2.    The ALJ failed to properly credit plaintiff's testimony regarding her subjective

15  complaints of constant pain.

16

17  **STANDARD OF REVIEW**

18      Under 42 U.S.C. Section 405(g), this Court reviews the ALJ's decision to determine

19  whether the ALJ's findings are supported by substantial evidence and whether the proper legal

20  standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial

21  evidence means "more than a mere scintilla" but less than a preponderance. Richardson v.

22  Perales, 402 U.S. 389, 401 (1971); Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996).

23      Substantial evidence is "such relevant evidence as a reasonable mind might accept as

24  adequate to support a conclusion." Richardson, 402 U.S. at 401. This Court must review the

25  record as a whole and consider adverse as well as supporting evidence. Morgan v. Comm'r,

26  169 F.3d 595, 599 (9th Cir. 1999). Where evidence is susceptible to more than one rational

27  interpretation, the ALJ's decision must be upheld. Robbins v. Soc. Sec. Admin., 466 F.3d 880,

28  882 (9th Cir. 2006).

1                                          **DISCUSSION**

2    **A.      The Sequential Evaluation**

3           A claimant is disabled under Title II of the Social Security Act if he or she is unable "to

4    engage in any substantial gainful activity by reason of any medically determinable physical or

5    mental impairment which can be expected to result in death or . . . can be expected to last for

6    a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner

7    has established a five-step sequential process to determine whether a claimant is disabled.  20

8    C.F.R. §§ 404.1520, 416.920.

9           The first step is to determine whether the claimant is presently engaging in substantially

10   gainful activity.  Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  If the claimant is engaging

11   in substantially gainful activity, disability benefits will be denied.  Bowen v. Yuckert, 482 U.S.

12   137, 141 (1987).   Second, the ALJ must determine whether the claimant has a severe

13   impairment.  Parra, 481 F.3d at 746.  Third, the ALJ must determine whether the impairment

14   is listed, or equivalent to an impairment listed, in Appendix I of the regulations.  Id.  If the

15   impediment meets or equals one of the listed impairments, the claimant is presumptively

16   disabled.  Bowen, 482 U.S. at 141.  Fourth, the ALJ must determine whether the impairment

17   prevents the claimant from doing past relevant work.  Parra, 481 F.3d at 746.  If the claimant

18   cannot perform his or her past relevant work, the ALJ proceeds to the fifth step and must

19   determine whether the impairment prevents the claimant from performing any other

20   substantially gainful activity.  Id.

21          The claimant bears the burden of proving steps one through four, consistent with the

22   general rule that at all times, the burden is on the claimant to establish his or her entitlement

23   to disability insurance benefits.  Id.  Once this prima facie case is established by the claimant,

24   the burden shifts to the Commissioner to show that the claimant may perform other gainful

25   activity.  Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).

26   ///

27   ///

28   ///

4

1 | **B.**      <u>**Barbara Gayle, Ph.D.**</u>

2      Barbara Gayle, Ph.D., a State Agency physician, conducted a psychological consultative

3 examination of plaintiff on January 10, 2003. (<u>See</u> AR at 172-77). In the report summarizing

4 her findings, Dr. Gayle noted that plaintiff reported she stopped working due to the pain and

5 dizziness that she experienced and that plaintiff had, at some point, acknowledged that she

6 "was depressed secondary to her ongoing pain and physical limitations." (AR at 173-74).

7 Plaintiff reported that her ability to control her temper was dependent on her level of pain and

8 that she had problems with short-term memory due to her medications. (AR at 173). With

9 regard to plaintiff's history of psychiatric disorders, Dr. Gayle noted that plaintiff denied

10 psychiatric hospitalizations and that plaintiff was receiving treatment for her emotional condition

11 that resulted from her injury. (<u>Id.</u>).

12      Dr. Gayle reported that plaintiff's mood was euthymic and that plaintiff was working to

13 overcome bouts of depression and dysphoric feelings. (AR at 174-75). Dr. Gayle reported that

14 plaintiff was alert, able to understand and implement instructions and gave "good effort." (AR

15 at 174). Dr. Gayle found plaintiff oriented to person, place, time, and the purpose of the

16 examination. Plaintiff was able to communicate her needs and concerns, her responses were

17 clear and appropriate, and her speech was comprehensible and within the normal range. (<u>Id.</u>).

18 Dr. Gayle found plaintiff's memory, insight and judgment to be adequate. (AR at 175). Dr.

19 Gayle noted that plaintiff did appear to be preoccupied with her physical discomfort and

20 limitations, but it did not appear to interfere with her ability to put forth her best effort. (<u>Id.</u>). She

21 determined plaintiff had the following functional ability:

22      ...[plaintiff] has adequate cognitive skills to cope with simple to

23      moderately complex tasks. At the time of this evaluation her

24      ability to concentrate, pace and persist [sic] was adequate.

25      However given her medical problems and the medications she

26      takes it is highly believable that [plaintiff] has periods of time

27      when she is not able to function as she was today. It is also

28      not clear from this brief evaluation whether she really would be

1    able to persist for a regular workday or a regular workweek.

2    She is able to function without supervision.  She is able to

3    reason sufficiently to avoid hazards.

4    (AR at 176).  Dr. Gayle also determined that plaintiff was able to manage her funds, provide for

5    her personal needs, drive herself to and from appointments, interact appropriately with others

6    and relate cooperatively with an authority figure.  (Id.).

7          On February 10, 2003, Mark Salib, M.D., a State Agency Psychiatrist, completed a

8    Psychiatric Review Technique of plaintiff's record.  (AR at 187-93).  Based on Dr. Gayle's

9    report, Dr. Salib determined that plaintiff had an affective disorder, which he specified as

10   depression and noted that it was not severe.[1]  (AR at 187-88).  Dr. Salib found that plaintiff had

11   mild restrictions in activities of daily living, and mild difficulties in maintaining social functioning,

12   concentration, persistence, or pace.  (AR at 189).  He noted that plaintiff's depression was

13   secondary to her physical condition.  (AR at 190).

14         In his decision, the ALJ relied on the opinion of Dr. Salib and concluded that "while

15   [plaintiff] has medically determinable depression, it results at most in only mild mental functional

16   limitations and thus, is not severe under the regulatory 'technique.'" (AR at 22).  The ALJ stated

17   that his conclusion was consistent with statements made by plaintiff (AR at 117), plaintiff's aunt

18   (AR at 121-23), plaintiff's March 28, 2005 letter, in which she stated that pain management had

19   helped her mentally (AR at 74) and the conclusions of Dr. Gayle.  (AR at 22).

20         Plaintiff alleges that the ALJ improperly rejected the opinion of Dr. Gayle. Plaintiff argues

21   that the ALJ's conclusion regarding plaintiff's depression is inconsistent with Dr. Gayle's

22   findings and, therefore, the ALJ was required to provide specific and legitimate reasons,

23   supported by substantial evidence in the record, for rejecting Dr. Gayle's opinion.  (Joint

24   Stipulation at 7-8).  In addition, plaintiff argues that the ALJ improperly substituted his opinion

25   for that of a medical professional and, in doing so, committed reversible error. (Joint Stipulation

26   at 8-9).

27

28      [1]  Dr. Salib indicated that plaintiff also had a coexisting non-mental impairment that required referral to another medical specialty.  (AR at 187).

1       The medical opinion of a treating physician is entitled to special weight.  20 C.F.R. §

2   404.1527; Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998); Lester v. Chater, 81 F.3d 821,

3   830 (9th Cir. 1995) (the opinions of treating physicians should be given more weight than the

4   opinions of doctors who do not treat the claimant).  If a treating physician's opinion is well

5   supported by medically acceptable clinical and laboratory diagnostic techniques and is not

6   inconsistent with the other substantial evidence in the record, it will be given controlling weight.

7   20 C.F.R. § 404.1527.

8       An ALJ may reject all or part of an examining physician's report if it contains

9   inconsistencies, is conclusory, or inadequately supported by clinical findings.  Thomas v.

10  Barnhart, 278 F.3d 947, 957 (9th Cir. 2002).  However, a finding that a treating physician's

11  opinion is not well supported by medically acceptable clinical and laboratory diagnostic

12  techniques or is not inconsistent with the other substantial evidence in the record, only means

13  that the opinion is not entitled to controlling weight.  Social Security Ruling ("SSR") 96-2p[2] ("A

14  finding that a treating source's medical opinion is not entitled to controlling weight does not

15  mean that the opinion is rejected.").  The opinions rendered by treating physicians are still

16  entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. Section

17  404.1527, such as the length of the treatment relationship, frequency of examination, and the

18  nature and extent of the treatment relationship.  SSR 96-2p; 20 C.F.R. § 404.1527(d)(2).

19      Here, Dr. Gayle opined that "it is highly believable" that plaintiff "has periods of time

20  when she is not able to function as she was today" and that it is "not clear from this brief

21  evaluation whether [plaintiff] would be able to persist for a regular workday or a regular

22  workweek."  (AR at 176).  Dr. Gayle's statements are speculative and reflect the possibility of

23  such limitations; they do not indicate that Dr. Gayle was of the opinion that plaintiff did have

24  such marked functional limitations as a result of plaintiff's mental condition.  Thus, Dr. Gayle's

25

26          [2]   Social Security Rulings are issued by the Commissioner to clarify the Commissioner's
27  regulations and policies.  Bunnell v. Sullivan, 947 F.2d 341, 346 n.3 (9th Cir. 1991).  Although they
    do not have the force of law, they are nevertheless given deference "unless they are plainly
28  erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir.
    1989).

1  opinion is not inconsistent with the ALJ's finding that plaintiff does not suffer from more than

2  mild mental functional limitations.  See Robbins, 466 F.3d at 882 (where the evidence is

3  susceptible to more than one rational interpretation, the ALJ's decision must be upheld).

4        Furthermore, it was plaintiff's burden to establish that her impairment was severe.  See

5  Parra, 481 F.3d at 746.  Plaintiff consistently alleged that her disability claim was based on her

6  physical impairments and, in her March 28, 2005 letter, stated, "I have never said that I had a

7  mental disability."  (AR at 74).  Plaintiff did not provide evidence to show that her mental

8  impairment caused more than mild mental functional limitations and did not meet her burden

9  to establish that she had a severe mental impairment.

10        The ALJ properly relied on the opinion Dr. Salib, which was entitled to weight.  20 C.F.R.

11  § 404.1527(f)(2)(I) (state agency medical and psychological consultants are highly qualified

12  physicians and psychologists who are also experts in Social Security disability evaluation and

13  administrative law judges must consider their findings as opinion evidence).  Thus, the ALJ

14  properly determined that plaintiff's depression resulted, at most, in only mild functional

15  limitations and that it was, therefore, not a severe impairment.  See Magallanes v. Bowen, 881

16  F.2d 747, 751 (9th Cir. 1989).

17  **C.    Plaintiff's Subjective Complaints**

18        Plaintiff alleges that the ALJ improperly rejected her subjective complaints when

19  assessing her residual functional capacity.  Plaintiff argues that her subjective complaints are

20  inconsistent with the ability to perform regular and continuous full time work at any exertional

21  level.  (Joint Stipulation at 15-17).  Plaintiff further argues that the ALJ's failure to consider the

22  difference between her daily activities and her ability to work eight hours a day, five days a

23  week, constitutes reversible error.  (Joint Stipulation at 19).  Defendant argues that the ALJ

24  properly considered plaintiff's medical treatment, daily activities, inconsistent statements and

25  the medical evidence in determining that plaintiff's allegations of constant, extreme pain were

26  not entirely credible.  (Joint Stipulation at 22-23).

27        An ALJ is not "required to believe every allegation of disabling pain" or other

28  non-exertional impairment.  See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989).  However,

1    to discredit a claimant's testimony when a medical impairment has been established, the ALJ

2    must provide "specific, cogent reasons for the disbelief." Morgan, 169 F.3d at 599 (quoting

3    Lester, 81 F.3d at 834).   The ALJ must "cit[e] the reasons why the [claimant's] testimony is

4    unpersuasive." Morgan, 169 F.3d at 599.

5         In Orn v. Astrue, 495 F.3d 625, 635 (9th Cir. 2007), the Ninth Circuit summarized the

6    Social Security Rulings that specify the proper basis for rejecting a claimant's testimony. See

7    SSR 02-1p; SSR 96-7p.   Factors that an ALJ may consider in weighing a claimant's credibility

8    include reputation for truthfulness, inconsistencies in testimony or between testimony and

9    conduct, daily activities, and unexplained or inadequately explained failure to seek treatment

10   or follow a prescribed course of treatment. Orn, 495 F.3d at 635 (citing Fair, 885 F.2d at 603

11   and Thomas, 278 F.3d at 958-59).

12        On review, the ALJ's decision will be upheld where the evidence is susceptible to more

13   than one rational interpretation. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  An ALJ's

14   findings are entitled to deference if they are supported by substantial evidence in the record and

15   are sufficiently specific for the reviewing court to assess whether the decision was

16   impermissibly arbitrary. Bunnell v. Sullivan, 947 F.2d 341, 345-56 (9th Cir. 1991).

17        Here, the ALJ determined that plaintiff's medically determinable impairments could

18   reasonably be expected to produce some of plaintiff's alleged symptoms.   (AR at 22).

19   However, the ALJ determined that plaintiff's subjective complaints regarding the intensity,

20   persistence and limiting effects of her pain (see AR at 74-78, 110-24, 222-26, 280-81) were not

21   entirely credible.  (AR at 23-24).   As discussed below, the ALJ's reasons for discrediting

22   plaintiff's allegations of pain withstand scrutiny.

23        **1.     Objective Medical Evidence**

24        First, the ALJ discussed the objective medical evidence in relation to plaintiff's

25   allegations of pain.  The ALJ noted that the magnetic resonance image (MRI) of plaintiff's

26   cervical spine taken on March 19, 2002 indicated mild degenerative disc disease and "a normal

27   spine for her age." (AR at 23; see AR at 154).  The ALJ noted that a 2004 MRI indicated that

28   her spine was essentially stable from 2002.  (AR at 23; see AR at 212).  The ALJ concluded

that objective evidence indicated a neck impairment, which justified the lifting/carrying limitations of no lifting overhead of more than 20 pounds occasionally assessed by C. Mebane, M.D., a State Agency physician, but that the mildness of the impairment did not justify further restriction in plaintiff's ability to lift or carry.  (AR at 23; see AR at 182).  The ALJ also noted that there was no objective evidence of a lumbar spine impairment or lower extremity impairment to support any standing, walking, sitting or postural limitations.  (AR at 23).

Once a claimant produces medical evidence of an underlying impairment, a claimant's testimony as to subjective symptoms may not be discredited merely because they are unsupported by objective evidence.  Lester, 81 F.3d at 834; Reddick, 157 F.3d at 722.  Here, the ALJ found that plaintiff had severe cervical spine degenerative disc disease and non-severe depression.  Accordingly, the ALJ cannot discredit plaintiff's allegations of pain merely because they are unsupported by objective evidence.  The Ninth Circuit has recognized the "highly subjective and idiosyncratic nature of pain and other such symptoms," such that "[t]he amount of pain caused by a given physical impairment can vary greatly from individual to individual." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).  Thus, the lack of objective evidence of plaintiff's pain is not a proper basis to discredit plaintiff's allegations of pain.

## 2. Plaintiff's Daily Activities

As discussed above, the ALJ properly determined that plaintiff had mild mental functional limitations and that she had the mental capacity to follow at least moderately detailed instructions and perform moderately complex tasks.  (See AR at 22).  In explaining his decision that plaintiff's subjective complaints were not entirely credible, the ALJ cited to plaintiff's March 28, 2005 letter:

> Despite indicating insufferable pain 24 hours a day that allegedly results in an inability to perform activities of daily living, the above-cited letter is an indication that [plaintiff's] pain does not preclude her from having the mental capacity to compose a well-thought-out four-page letter. [AR at 73-78].

(AR at 22).  The ALJ then cited to the testimony of plaintiff's aunt and plaintiff.  The ALJ noted

1  that plaintiff's aunt stated that plaintiff had no problem following instructions or paying her bills

2  and could remember what she read.  (AR at 23; see AR at 121-23).  The ALJ cited to plaintiff's

3  aunt's testimony that plaintiff could do light cleaning if her pain permitted, walk to the corner,

4  cook once or twice a week, and also cited to plaintiff's own testimony that she could drive when

5  necessary and concluded that plaintiff's "ability to perform a limited range of activities of daily

6  living lessens the credibility of her complaints of constant, disabling pain."  (AR at 23-24; see

7  AR at 111, 112, 114, 120-21).

8          In evaluating a claimant's credibility, an ALJ must consider the factors set forth in Social

9  Security Regulation 95-5p, including a claimant's daily activities.  With respect to daily activities,

10  the Ninth Circuit has held that a specific finding that a claimant is able to spend a substantial

11  part of her day engaged in pursuits involving the performance of physical functions that are

12  transferable to a work setting may be sufficient to discredit a claimant's allegations of pain.

13  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001).  However, the Ninth Circuit has

14  cautioned that "many home activities are not easily transferable to what may be the more

15  grueling environment of the workplace, where it might be impossible to periodically rest or take

16  medication."  Fair, 885 F.2d at 603.  The Ninth Circuit has found that activities such as grocery

17  shopping, driving a car, or limited walking for exercise do not "in any way detract from [a

18  claimant's] credibility as to [his or her] overall disability."  Vertigan, 260 F.3d at 1050.  The Ninth

19  Circuit has repeatedly stated that a claimant need not be utterly incapacitated in order to be

20  disabled under the Social Security Act.  See Fair, 885 F.2d at 603; Vertigan, 260 F.3d at 1050.

21          Here, the ALJ properly cited to plaintiff's limited activities in support of his decision to

22  discredit her testimony of constant, disabling pain.  See SSR 95-5p.  The ALJ properly

23  considered plaintiff's ability to write a well-thought-out letter, follow instructions, pay bills,

24  remember what she read, do some light cleaning, walk to the corner, occasionally cook, and

25  occasionally drive as a factor when evaluating plaintiff's credibility.

26          **3.      Inconsistent Statements**

27          The ALJ also cited to inconsistences in plaintiff's testimony regarding her pain and daily

28  activities.  In evaluating a claimant's credibility, an ALJ may consider factors such as a

1  claimant's reputation for truthfulness and inconsistencies in a claimant's testimony or

2  inconsistencies in a plaintiff's testimony and conduct.  Orn, 495 F.3d at 635.

3          Here, the ALJ determined that plaintiff's pain was not as constant and severe as she

4  claimed at the hearing.  The ALJ discussed the medical evidence documenting plaintiff's pain.

5  The ALJ first cited to the most recent treatment note from Harsimran Brara, M.D., a neurologist

6  who stated that plaintiff's pain was not a true radicularity, may resolve slightly, that her pain was

7  not always at ten on a scale of one to ten (with ten indicating the most pain), and that she had

8  no problems with gait or hand dysfunction.  (AR at 24; see AR at 154).  The ALJ noted that on

9  April 17, 2002, Particia Harrison, M.D., a treating physician, stated that plaintiff reported pain

10  at a level six out of ten on April 17, 2002 (see AR at 152), that on May 17, 2002, Dr. Harrison

11  indicated plaintiff reported no upper extremity paresthesia (see AR at 169), and that two years

12  later, on October 15, 2004,[3] plaintiff again reported pain at a level six out of ten (see AR at 213).

13  (AR at 24).  The ALJ concluded that while plaintiff's pain undeniably existed, it was "not as

14  constant, severe and all-encompassing as claimed, which lessens her credibility."  (AR at 24).

15  The inconsistencies in plaintiff's reports to her doctor and her testimony at the hearing is a

16  proper basis upon which to evaluate plaintiff's credibility with regard to her allegations of

17  constant pain.  See Smolen, 80 F.3d at 1284; Fair, 885 F.2d at 604 n.5 (conflicts in a claimant's

18  statements or testimony support a finding that the claimant lacks credibility).

19          **4.      Conservative Medical Treatment**

20          Finally, the ALJ cited to plaintiff's conservative medical treatment in support of his

21  decision to discredit plaintiff's subjective complaints of constant pain.  (AR at 24).  The ALJ

22  noted that a July 23, 2002 physical therapy note indicated that plaintiff completed only 9 out of

23  15 sessions.  (AR at 24; see AR at 147).  The ALJ opined that plaintiff may not have completed

24  her therapy sessions because she felt as if she was not accomplishing anything, but noted that

25  the physical therapy note did not indicate any justification for not completing the recommended

26

27          [3] In his decision, the ALJ erroneously cites the date of the Dr. Harrison's examination of
28  plaintiff as October 15, 2002.  (AR at 24).  The examination actually took place on October 15, 2004.
    (See AR at 213).

1  sessions.  The ALJ noted that the physical therapy note indicated that plaintiff could continue

2  her therapy at home and that there was no indication that plaintiff explored other treatment

3  options such as "chiropractic care, massage therapy or pool therapy" and that there was no

4  indication that these methods of treatment were specifically prohibited.  (AR at 24).  The ALJ

5  further stated that "[t]he fact that [plaintiff] has not had other treatment suggests that her home

6  therapy is working and making her pain bearable, which lessens her credibility as to complaints

7  [sic] disabling pain."  (AR at 24).  In addition, the ALJ noted that Dr. Harrison's October 15,

8  2004 treatment note recommends further pain injections even though plaintiff reported

9  increased pain with the prior injection.  (AR at 24; see AR at 213).  The ALJ interpreted this

10 recommendation as an indication that Dr. Harrison felt that this mode of treatment was still

11 viable in providing plaintiff with pain relief.  (AR at 24).

12          An ALJ may rely on a plaintiff's conservative treatment regimen to reject a plaintiff's

13 testimony of disabling limitations or disabling pain.  Fair, 885 F.2d at 604.  In Fair v. Bowen, the

14 Ninth Circuit affirmed an ALJ's credibility decision where the ALJ stated, among other things,

15 that the claimant received only minimal conservative treatment for his various complaints.  Id.

16 The Ninth Circuit also noted that a claimant could overcome an ALJ's credibility decision by

17 offering a credible explanation for the lack of more serious treatment.  Id.  ("While such

18 reasoning may not hold up in all cases (there may be claimants with good reasons for not

19 seeking treatment and credible explanations for their ability to work inside but not outside the

20 home), it is sufficient here, as [the claimant] has not put forward any evidence that reconciles

21 the inconsistency between his words and his actions.");  see also 20 C.F.R. § 404.1530 (listing

22 acceptable reasons for failure to follow prescribed treatment).

23          Here, plaintiff offers no explanation of why she did not complete her physical therapy,

24 obtain additional pain injections, or seek further treatment for her pain.  Such failure to seek

25 treatment, given her allegations of disabling pain and severe functional limitations, constitutes

26 an adequate ground for rejecting plaintiff's credibility.  See Fair, 885 F.2d at 604.

27          Taken as a whole, the ALJ's reasons for rejecting plaintiff's credibility are sufficiently

28 specific, and the decision to reject plaintiff's testimony regarding her pain and functional

1 limitations is supported by substantial evidence in the record.  See Morgan, 169 F.3d at 599;

2 Orn, 495 F.3d at 635.  Thus, the Court concludes that the ALJ did not err in rejecting plaintiff's

3 subjective complaints regarding the intensity, persistence and limiting effects of her symptoms.

4

5 **ORDER**

6 After careful consideration of all documents filed in this matter, this Court finds that the

7 decision of the Commissioner is supported by substantial evidence and that the Commissioner

8 applied the proper legal standards.  The Court, therefore, AFFIRMS the decision of the

9 Commissioner of Social Security Administration.

10 **LET JUDGMENT BE ENTERED ACCORDINGLY.**

11 DATED: April 14, 2008

12                                        /s/
JENNIFER T. LUM
UNITED STATES MAGISTRATE JUDGE